AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
MAY 11 2018
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Black "Vortex" model cell phone, IMEI 352582073273436

Case No. **18MJ2391**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A3

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B3

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1951 | Interference with Commerce by Threats of Violence (The Hobbs Act) |

The application is based on these facts:
Please see the attached Affidavit of Scott Zagrodny

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Scott Zagrodny, Special Agent FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/11/18

*Judge's signature*

City and state: San Diego, California

Bernard G. Skomal, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# APPLICATION TO SEARCH PHONES

I, Scott R. Zagrodny, being duly sworn, declare and state:

## I. Affiant's Training And Experience

1. I am a Special Agent with the Federal Bureau of Investigation (FBI). I have been so employed since August 2016. As part of my duties as an FBI agent, I am presently assigned to the Violent Crimes Task Force and have investigated various crimes that include, but are not limited to, bank robbery, kidnapping, and possession/distribution of child pornography. Prior to becoming a Special Agent, I was employed with the FBI since September 2008 in various other roles. As a federal agent, I am authorized to investigate violations of laws of the United States and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

2. My experiences as a Special Agent and FBI employee, my participation in a multitude of investigations, and my interactions with other agents, and other state and local law enforcement officers familiar with violent crimes, as well as my training form the basis of the opinions and conclusions set forth below, which I have drawn from the facts set forth herein are set forth in substance not verbatim, unless otherwise noted.

## II. Purpose Of This Affidavit

3. This affidavit supports an application for a warrant to search cell phones connected to several robberies affecting interstate commerce and described as follows:

**Subject Telephone 1**: an iPhone (IMEI 353257077643681), in the possession of the San Diego Police Department, 1401 Broadway, San Diego, CA. (hereinafter referred to as the **Subject Telephone 1**);

**Subject Telephone 2**: an iPhone (IMEI 353299075006560), in the possession of the FBI, San Diego Division, 10385 Vista Sorrento Parkway, San Diego, CA. (hereinafter referred to as **Subject Telephone 2**);

**Subject Telephone 3**: a black "Vortex" model cell phone (IMEI 352582073273436), in the possession of the San Diego Police Department, 1401 Broadway, San Diego, CA (hereinafter referred to as **Subject Telephone 3**) (collectively the **Subject Telephones**).

I seek permission to search the **Subject Telephones 1**, **2**, and **3** for evidence of violations of Title 18, United States Code, section 1951, the Hobbs Act – Interference with commerce by threats or violence (the **Target Offense**). I have probable cause to believe that evidence, fruits, and/or instrumentalities of violations of federal law will be found on the Subject Telephones, specifically in electronic form.[1]

4. As set forth below, FBI is investigating a series of ten robberies occurring between January 25, 2017 and February 21, 2017 in San Diego County, California for violation of the **Target Offense**).

5. The following is based on my own investigation, and consultation with other law enforcement agents and officers. Because this affidavit is for a limited purpose, I have not included every fact I know about this investigation. I set forth only facts necessary to establish foundation for the requested warrants. Dates and times are approximate.

//

//

---

1 On June 8, 2017, United States Magistrate Nita L. Stormes signed search warrant 17mj1821, 17mj1822, and 17mj1823 for **Subject Telephones 1, 2** and **3** respectively. However, after the **Subject Telephones** were searched, it was discovered that the Affidavit supporting those warrants inadvertently omitted the standard Procedures for Electronically Stored Information that are customary in this district. This updated Affidavit has the search protocol provisions. Formatting corrections aside, the current affidavit is virtually identical to the one Judge Stormes authorized. Nothing obtained in the first search is being relied on in seeking this warrant, and I have not included any information from that search in this affidavit. I provide this information in the interest of full disclosure and ask the court not to consider the fact of the prior search warrants or any information agents may or may not have seen during the prior search in determining whether there is probable cause for the requested warrant.

2

### III. Probable Cause

6. Between January 25, 2017 and February 21, 2017, ten Metro PCS stores in San Diego County, California were robbed. The robberies occurred at the following locations, dates and times:

| Robbery No. | Metro PCS Location | Date/Time |
|---|---|---|
| 1 | 8662 Jamacha Road, Spring Valley, CA | 1/25/2017 at 2:50 p.m. |
| 2 | 4202 El Cajon Blvd., San Diego, CA | 1/27/2017 at 1:11 p.m. |
| 3 | 3458 Adams Avenue, San Diego, CA | 1/30/2017 at 2:40 p.m. |
| 4 | 1840 Coronado Ave., San Diego, CA | 2/1/2017 at 3:04 p.m. |
| 5 | 12328 Poway Road, Poway, CA | 2/6/2017 at 5:01 p.m. |
| 6 | 5430 Clairemont Mesa Blvd., San Diego, CA | 2/7/2017 at 12:56 p.m. |
| 7 | 6686 El Cajon Blvd., San Diego, CA | 2/8/2017 at 5:22 p.m. |
| 8 | 218 W San Marcos Blvd, San Marcos, CA | 2/10/2017 at 3:51 p.m. |
| 9 | 2691 Mission Village Drive, San Diego, CA | 2/14/2017 at 3:19 p.m. |
| 10 | 909 Grand Avenue, San Diego, CA | 2/21/2017 at 2:08 p.m. |

7. For all but the first robbery, the suspect entering the store used what appeared to be a black, semiautomatic pistol, held sideways, parallel to the ground. Following the tenth robbery, the object that appeared to be a pistol was found to be a pellet gun. In the first robbery on January 25, 2017, the suspect threatened victims with a machete.

8. According to Metro PCS business records (inventories) two of the cellular telephones taken during the first robbery on January 25, 2017 were **Subject Telephones 1** and **2**. A person identifying himself as "Justin Caldwell" activated both phones on January 27, 2017, at a different Metro PCS store in San Diego. Agents have reviewed videos from the store's security system taken during the time the phone was activated and compared those photographs to booking photos of Justin CALDWELL maintained by the San Diego County Sheriff's Department, and believe that the person who activated the phones is CALDWELL. Video also shows CALDWELL driving a black Mercedes c-class sedan to the store where he activated the two phones on January 27, 2017. An individual matching the appearance of Carlos Adolfo SOTO can be seen entering the passenger side of the Mercedes while CALDWELL is activating the two phones. One of these phones, **Subject Telephone 1**, was found on CALDWELL's

3

person when he was arrested on February 21, 2017, during an attempted robbery of the Metro PCS store located at 909 Grand Avenue in San Diego. When interviewed following his arrest, CALDWELL stated he was living out of his car and only used the bathroom at his parents' residence. Based on surveillance, interviews, and jail calls, CALDWELL and SOTO were residing at different locations.

9. On February 14, 2017, agents observed CALDWELL texting using a cell phone and wearing a gray hooded sweatshirt in the vicinity of 8353 Sweetway Ct., Spring Valley CA. Agents identified CALDWELL by comparing their observations with the booking photos of CALDWELL and photos from CALDWELL's Facebook account. Agents observed CALDWELL enter the residence and exit about ½ hour later wearing light colored jeans, cropped below the knee, and a black tank top. He was carrying a gray sweatshirt. He placed the grey sweatshirt in a plastic bag and put it in the trunk of the Mercedes. At approximately 10:35 a.m., agents saw CALDWELL talking on the cell phone while driving the Mercedes. FBI agents last observed CALDWELL turn into a parking lot near the Meadowbrook apartments, off of Meadowbrook Drive at approximately 10:38 a.m. The ninth robbery of a Metro PCS at 2691 Mission Village Drive, San Diego, CA, occurred later the same day at approximately 3:19 p.m. Surveillance footage of a parking area behind the Metro PCS captured CALDWELL's and SOTO's faces before they entered the store to commit the robbery. CALDWELL was observed wearing a grey hooded sweatshirt.

10. Prior to the robbery on February 21, 2017, SDPD robbery detectives observed CALDWELL alone, driving a 2007 Black Mercedes. CALDWELL drove into the area of San Diego State University and he was not observed for 10-15 minutes. FBI agents then saw a 2007 black Mercedes c-class sedan with assigned California license plate number 6SGX844, but bearing only paper plates, dark in color with vehicle Identification Number ("VIN) WDBRF52HX7912534 ("Mercedes"), registered to Justin CALDWELL and used by CALDWELL at the intersection of College Avenue and El Cajon Boulevard in San Diego, California. At approximately 1:05 p.m., agents

observed CALDWELL and a second male (light-skinned, medium bulk build, approximately 5'6'') (later identified as Carlos Adolfo SOTO) exit the Mercedes near a Chinese food restaurant and 711 at the southwest corner of El Cajon and 70th Street. Agents observed CALDWELL and SOTO enter the Chinse food restaurant. Approximately 10 minutes later, agents observed CALDWELL and SOTO exit the restaurant, enter the Mercedes, and ultimately drive to a parking lot behind a 7-11. Agents then saw CALDWELL exit the Mercedes, open the trunk, and pull out what appeared to be grey clothing similar to that worn by suspects in prior robberies. Agents saw CALDWELL reenter the Mercedes and drive throughout San Diego. Eventually, the Mercedes drove past a Metro PCS store at 909 Grand Avenue.

11. CALDWELL parked the Mercedes at 911 Thomas Avenue and waited in the car. Agents saw SOTO exit the Mercedes, wearing a backpack and hooded sweatshirt, and walk toward a shopping plaza on Grand Avenue. Police officers saw CALDWELL pull out the parking space, and then backing the Mercedes into it.

12. At approximately 2:05 p.m., agents observed SOTO exit the Metro PCS Store, carrying a plastic bag, run to where the Mercedes was parked and where CALDWELL was waiting in the driver's seat. Officers with the San Diego Police Department arrived to the area where the Mercedes was parked and arrested CALDWELL. CALDWELL was in possession of **Subject Telephone 1** when he was arrested and it was seized incident to arrest.

13. SOTO ran down the street, through an alley, and climbed the wall of a residential property. Officers located SOTO hiding in a backyard and placed SOTO under arrest. Officers found and seized approximately $98.00 in United States currency near SOTO's person and approximately $57 in United States currency in a plastic bag dropped nearby. Agents observed SOTO carrying such a bag out of the Metro PCS Store. In a nearby walkway on an adjacent property agents found nine cellular telephones; a hooded sweatshirt similar to the one worn by the robber; and a pellet gun.

5

Officers also seized **Subject Telephone 3**, which SOTO had on his person when arrested.

14. Agents spoke to G.B., an employee of the Metro PCS Store, who advised that a male entered the Metro PCS Store with his face covered so G.B. could only see his eyes. G.B. said that the male entered the store with a gun drawn, told G.B. to go to the back of the store and open the safe. After G.B. opened the safe, G.B. said the male told him/her to walk to the far wall of the room and face away from the male. G.B. further said that the male took money from the register and took cell phones from the safe before running out of the store.

15. Following CALDWELL's arrest, he waived his Miranda rights and told investigators he activated the two stolen phones and provided one of these phones to his girlfriend, Annabel LIMON. The phone he provided to LIMON, an iPhone 6s, is **Subject Telephone 2**. On April 13, 2017, a San Diego Police Detective and an FBI agent went to 2317 Hopkins Street, San Diego, California, in an attempt to interview LIMON and retrieve the stolen iPhone that CALDWELL activated. LIMON stated to the investigators, "I don't remember when Justin gave me the iPhone. It was before my baby was born on February 16, 2017. I later paid him for the phone and put the account under my name at Metro PCS." When investigators told LIMON that the phone was stolen and that she needed to give it to the investors due it being evidence in an ongoing criminal case, LIMON stated, "I didn't know the phone was stolen and I put it under my name. I need the phone. I'm not going to give you the phone. I don't know what Justin did in his spare time. He told me he got the iPhone from a friend." When investigators told LIMON she was in possession of stolen property, she stated, "No, I'm not giving you the phone."

16. On April 26, 2017, the United States District Court for the Southern District of California authorized a warrant for LIMON's residence, 2317 Hopkins Street, San Diego, California to search for, and seize, **Subject Telephone 2** (the warrant did not authorize a search of the phone, only its seizure). On April 28, 2017, a San

6

1  Diego Police Detective and an FBI agent again attempted to retrieve **Subject Telephone 2** from LIMON, stating they had a search warrant of the residence to obtain the phone. LIMON initially refused to provide **Subject Telephone 2**, and the FBI executed the search warrant and entered 2317 Hopkins Street. Approximately 30 minutes into the search warrant execution, LIMON surrendered **Subject Telephone 2** to the FBI.

17. While CALDWELL and SOTO were both in San Diego Police Department custody on February 21, 2017, SOTO asked to obtain contact numbers from his cell phone, seized incident to his arrest. A San Diego Police Detective and SOTO used **Subject Telephone 3** to obtain contact numbers for SOTO that were stored in **Subject Telephone 3**.

## Basis For Evidence Sought in Search Warrant

18. Based on the above investigation, and my training, experience, and consultation with other law officers regarding robberies and other violent crimes:

   a.  Two individuals coordinating 10 separate robberies will utilize cell phones to arrange meeting times and locations and otherwise discuss the logistics of these robberies. If any two people do 10 different activities together on 10 different days, there will have to be some degree of coordination.

   b.  Individuals involved in robberies and other violent crimes who are working in concert with each other often communicate using cellular telephones to plan and carry out robberies. For example, SOTO and CALDWELL were together at the Chinese restaurant in advance of the robbery on February 21, 2017. Through surveillance on CALDWELL earlier that morning, I know that SOTO and CALDWELL were not together earlier that morning. I believe that SOTO and CALDWELL likely used cellular phones to arrange the time and location to meet that day.

   c.  Individuals involved in robberies and other violent crime use cellular telephones to increase their mobility and coordinate illicit activity, through traditional audio conversations, emails, social media, and other electronic applications. Records

7

of these communications are often stored on the devices and may not be accessed through records obtained from service providers.

    d.    Individuals involved in robberies may utilize web searches related to robbery targets, travel to and from their robbery targets, searches related to methods or techniques for robbery, and searches related to possible security measures at their robbery targets.

    e.    Individuals involved in robberies and other violent crimes often have electronic documents and files, which were used to aide and facilitate the commission of the crime. In many instances, these files can contain additional forensic and transactional evidence linking the subject to the crime and/or the identification of other co-conspirators.

    f.    Individuals involved in robberies and other violent crimes often will use cell phones to take photographs of stolen items in order to facilitate the sale of those items.

    g.    Through training and conversations with other special agents and experts, I have learned location and/or GPS information can be electronically stored on a cellular phone and extracted for analysis. This information can indicate times a particular device was near a specific location, such as the scene of a robbery or the residence of a co-conspirator.

### Procedures For Electronically Stored Information

19. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy

8

all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect the subject cellular telephones and subject them to analysis. All forensic analysis of the data contained within the telephones and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

//
//
//
//
//
//

9

WHEREFORE, I request that the court issue a warrant authorizing the search of **Subject Telephone 1, Subject Telephone 2,** and **Subject Telephone 3** as set forth above.

_____
Scott Zagrodny
Special Agent, Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me on May 11, 2018.

_____
HONORABLE BERNARD G. SKOMAL
United States Magistrate Judge

## **ATTACHMENT A-3**

The Property to be searched is a black "Vortex" model cell phone (IMEI 352582073273436), (Subject Telephone 3). The Device is currently held by FBI San Diego at 10385 Vista Sorrento Parkway, San Diego, California.

## ATTACHMENT B-3

## ITEMS TO BE SEIZED

Authorization to search Subject Telephone 3 described in Attachment A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular phone. The seizure and search of Subject Telephone 3 will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from Subject Telephone 3 will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of **January 25, 2017** to **February 21, 2017**. Within that period the evidence to be seized is as follows:

   a. photographs of clothing, disguises worn, weapons and materials used during the robbery, along with any proceeds attained from the robbery and materials taken from the robbed locations;

   b. records of plans to commit robbery, plans to sell or transfer goods obtained during the robberies, and records of any reporting of the robberies by the press to the public;

   c. phone contents tending to identify co-conspirators, criminal associates, or others involved in the robberies;

   d. location data or other records tending to identify travel to or presence at locations that were robbed or attempted to be robbed;

   e. webpage or other phone data related to robbery targets, searches related to methods or techniques for robbery, and searches related to possible security measures at robbery targets

   f. communications and social media posts regarding the robberies or proceeds from the robberies, to include celebratory remarks after the successful completion of the robbery

   g. communication with others made about or in executing the robberies

   h. phone contents tending to identify the user of, persons with control over access to, the subject telephone; and/or

      i. phone contents tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data, involved in the activities described above;

**which are evidence of violation of Title 18, United Code, Sections 1951.**

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for evidence of the above.